Good morning, Your Honors. Good morning, Counsel. May it please the Court. My name is Shashi Kevalramani, and I represent Appellant Jorge Sosa in this appeal. I was also his trial counsel. Before I start, I'd like to, with the Court's assistance since it was offered, try and reserve two minutes for rebuttal. There were eight issues presented in our appellate brief. In light of the time, I wanted to focus on four, if I'm lucky we'll get to them. The first issue was, were the two questions, were two of the three questions that were the bases for Count 1 fundamentally ambiguous or excessively vague? Second was, one of those questions which formed the exclusive basis for the conviction under Count 2 fundamentally ambiguous or excessively vague was the territoriality aspect and whether it was appropriately applied to Mr. Sosa's situation based on what had occurred in Guatemala. Third, whether the District Court improperly denied the admission of evidence that was derived from a certified copy of an alien file. Fourth, the convictions that were improperly noticed by the Court and provided to the jury regarding convictions of other soldiers in Guatemala that occurred in 2011, which was three years after Mr. Sosa filled out the application. And finally, whether the United States acted properly with respect to the bases for the killings that occurred down in Guatemala, namely the rapes. So turning first to the questions that formed the basis for Count 1, there were two questions. And whether those questions were fundamentally ambiguous or excessively vague, sufficient to support a conviction for a false statement. With respect to the first question, and that was, have you ever committed a crime or offense for which you were not arrested? That is a gotcha question. It is a question that any prosecutor, and I was a former USA, could have said, gosh, I can get you for anything because were you speeding yesterday? You didn't put that down. That's a crime or offense. It is so broad. It is so vague. It provides no parameters that are required in prosecutions based on false statements. So, and I understand the purpose of the question. It has a valid purpose in the form. It's a funneling question. The first question is, have you done anything wrong? Second question is, have you ever been charged? Have you ever been, third, have you ever been convicted? Fourth, have you ever been incarcerated? There are facts then that are being asked about. The first question is essentially, have you done anything wrong? And like United States v. Carrick, where the question was, is there anything embarrassing? And the district court in the Southern District of New York said, that's just too subjective. What is embarrassing to one person may not be embarrassing to the other. And why isn't this all argued to the jury? And the jury winds up saying, nope, this is a crime and he knew it, he's guilty. Yes, Your Honor. And it was, but sometimes the questions are so fundamentally vague, I'm sorry, fundamentally ambiguous and excessively vague, they shouldn't even get to the jury. Why not? Because under the Constitution precepts that we have, Bronston and the cases that have come after that, when a prosecution is based on a false statement, we shouldn't put the what the answer was putting down. That's not their role. The role is for the judge at that point. And it's not for all... The jury's always guessing on some level. They are. I mean, they don't know. If they knew, they wouldn't be eligible to serve as jurors. Fair enough. But they are guessing on some level. But sometimes the questions are so fundamentally unfair to support a conviction or to support a prosecution. You know, you may have something, if you talk about you were five miles over the speed limit yesterday and you said no to this, and I don't think many juries would convict there. The problem in this case is that what your client did, he may have had reasons, and I'm sure he argued or you argued those reasons to the jury as to why he didn't perceive that to be a crime. But I don't have a lot of trouble saying that the jury could have looked at this and said, that was a crime and he knew it was a crime, and when he said no, he was trying to avoid further inquiry because he didn't want to go down that funneling process. If he'd answered yes to that, they would have asked questions he didn't want to answer, so he answered no. Why can't the jury make that conclusion? Well, Your Honor, I think the court hit on something that's unique in this case. The facts underlying this matter are horrendous, and that colored the whole trial. I tried to refocus it to the forum, but... I have every understanding as to why you tried to refocus to the forum, but as you say, the facts here are horrendous. They are, and we had this discussion below. The crime below was, the fact was, did you kill somebody? That was the factual inquiry that should have been made. In fact, as the government concedes in its opinions, I mean, in its response, the forum has been modified to ask for particular acts. Have you killed, have you done something... To ask all those questions he hoped to avoid by answering no to this question. Perhaps, but the question is so fundamentally vague, it can support any prosecution. We have to look at it, that is this the type of question that could support, not just the facts here, but overall, and it's an as-applied challenge. Is this question so bad that it basically gives the prosecution carte blanche to go after anybody at any time based on any information? I mean, I hear you, but you're not really articulating an as-applies challenge. You're articulating a facial challenge because you don't want to talk about the particular facts in this case or accept the fact the jury paying attention to the facts of this case reached the conclusion that this was a crime and he knew it. It's the second part that may have been the hard part in this case, but the jury concluded he knew it, so that when he answered this question no, he was knowingly answering or responding with a false statement. Now, I accept your argument if somebody's in here because a jury managed to convict him for five miles over the speed limit, but that's not the case we have here. So do you have a facial challenge or is this really the as-applied challenge you described it as? I believe it's as applied to the question that's being used for the section 1015 as all the other cases that have been cited, Damra, Sarwari, out of circuit. The in-circuit case was Culleton. In that case, there were facts that were asked. Dizziness, headaches, vision problems. Those were all identifiable facts that the questioner could answer to. Here, a crime or offense is the akin of saying, have you done anything wrong? But isn't the district court judge entitled to consider the nature and circumstances of the offense and the history and characteristics of the defendants as well as the seriousness of the offense? Here, the jury found that Mr. Sosa had participated in horrific war crimes and then lied about that participation in order to gain his citizenship. Why isn't that enough? It's not enough because the question is so bad. You have to look at the question and what can be done with that question. Can that form the basis for a prosecution? The facts aside here, if the government had gone after him for lying about, and they mentioned in their appellate briefs in certain other places, the crime of desertion. He left the Guatemalan army. That could have been an argument that was forwarded by the government. The question is so bad it allows the government to go after anything. In false answer prosecutions, we have to hold the government to its responsibility to ask for precise questions that can be answered with precision. Crime or offense is so vague that it can be used for any purpose. Your Honor, just to go back, the standard, this court has not addressed what the standard of review is. We would urge the court to apply a de novo standard which the other circuits have applied, but this court has not addressed the standard of review for this matter. I would like to turn to the second question which was, have you ever been a member of or associated with any organization, association, fund, foundation, party, club, society or similar group in the United States or in any other place? That was a question also that formed the basis for one of the predicate questions for count one. I think, Your Honor, I would submit the very argument that we're having here shows it's excessively vague and fundamentally ambiguous. Specifically, the plain language of that question does not ask for prior military service. The government's own witness said that repeatedly. This does not ask, the plain language of this question does not ask for prior military service. The government is saying, yes it does, it includes anything. That is, again, an ability that gives the government carte blanche to go after any sort of answer or any information that's left out as a basis for prosecution. That cannot be the basis for prosecutions based on false answers. So, unless the court has any questions, I'd like to move on to the other issue which was whether the court improperly denied the defense the ability to bring in the page from a certified copy of an alien file of a material witness. And that, the objection was raised as hearsay. It is from a certified copy of an alien file that was provided by the government, and as this court has recognized repeatedly in Hernandez-Herrera and in other matters, where a certified copy of a file is provided, subject to potential Crawford issues, it can come in, as an exception to the hearsay rule under 803-8. Here, there is no dispute that it came from a certified copy of the alien file. No dispute whatsoever. The only dispute that was raised by the government was, well, we don't know who wrote it because it's got handwriting. There is unidentified handwriting in alien files and all sorts of government files, but as long as it is a certified copy and there's nothing to indicate its untrustworthiness, it is improperly in the file for the agency that is charged with enforcing those rules. That should have been allowed, and of importance was the statement on there which says, February 2009, Guatemala lifted the amnesty and arrested two suspect caibillas in the case. And I appreciate the government's argument that saying amnesty is not forgiveness of a crime, but that's, frankly, I'd submit, Your Honor, we're in the business. We know the law. What's the point? What is it you wanted to use the notation for? To show, at least to present to the jury, to say there was amnesty, so a layperson could believe, if I can't be prosecuted for it, I didn't commit a crime. Was there amnesty? I mean, if there was, wouldn't there be all sorts of evidence available? Well, it was going back and forth, because there was something regarding the general down there who committed the coup, Rios Montt. It's going up to the constitutional court. It would come down from the constitutional court. It's in flux. We don't know, frankly, whether it's... So what you're trying to do here is take the handwritten note made by persons unknown, based on information unknown, to draw a conclusion which the direct evidence might not support. It is... We don't know who wrote it. That's correct. But it was... We don't know what it's based on. But it was in the file. Correct, Your Honor. But it was in the file for the agency charged with enforcing the law and... Well, the rule, you know, that says these A files are admissible, I mean, they come with all kinds of qualifiers. For instance, I mean, I don't think any district judge would admit, would say in the 1326 prosecution, the portion of A file which, you know, where your patrol agent says, the defendant told me that he knew it was cocaine, right, without the presence of the agent being there. So, you know, there are qualifiers. I mean, you know, you can't... I mean, certain assertions made by certain persons, even in the A file, are not admissible, aren't they? Isn't that true? That's correct, Your Honor. So there's no blanket rule that A files are admissible. No. It is no blanket rule, but the exceptions were in the example that Your Honor gave, it was an investigatory function, and that's a police function. It wasn't an administrative function. Here, there's no indication that it was part of the police function of the agent or whoever, the person who wrote that and properly placed it in the certified copy of the A file. I see I have one minute and 30 seconds left, so I'd like to reserve that time. Thank you, Your Honor. Thank you. We'll hear from the government. Good morning. William Glasser for the United States. To address the issue of the fundamental ambiguity, I think to a certain extent there is some agreement between the parties with respect to what the court should be focusing on when addressing the fundamental ambiguity as opposed to the sufficiency of the evidence. The government does agree that with respect to the question of fundamental ambiguity, the question for the court is, was the question itself so fundamentally ambiguous that it could not go to the jury? Now, with respect to the jury's finding that the evidence was sufficient, that he knowingly made a false statement, that's something where the jury was certainly able to take into account the seriousness of the offense in Guatemala. Will you address the first part of that? Because looking at the question, which is a little ambiguous, wouldn't the ordinary person disagree that the question covered foreign military service? Your Honor, with respect to the second question, there is, I would admit, some ambiguity with respect to the question of whether or not foreign military service falls within the broad meaning of organization or association. However, the existence of some ambiguity, this court has made clear, does not mean that a question cannot go to the jury. It's for the jury to determine, as the jury was properly instructed here, whether or not the defendant actually knowingly made a false statement. Now, with respect to the crime or offense question, however, here's where the defense's argument is actually a weakness. He's saying that the question... By the way, just let me ask you a procedural question. Those two questions were in separate counts? No, Your Honor. They were wrapped up in the same count, right? That's correct. With respect to count one, there were three questions that were charged. Right. So here's my question, then. In order to sustain the conviction, we have to be able to conclude that the conviction in all three statements are valid, right? No, Your Honor. You only need to find that there was one valid question underlying each count. And I can briefly explain, and I'll return to the earlier point. The Supreme Court in Griffin considered the question of whether or not the sufficiency of the evidence could be upheld based on when there were several different allegations in the indictment. And it was a general verdict, and there was no way to know what the jury based its verdict on. And in Griffin, the court explained that if there's legal error, then if the jury's conviction was potentially based on legal error, then the court needs to remand for new trial. If it's a sufficiency matter, then the court can affirm, as long as the evidence was sufficient on one basis. Now, in this case, we actually had a special verdict, which can be found at pages 40 through 42 of the excerpts of record. And in this case, the jury was specifically asked to find which questions on the N-400 form the defendant failed to answer honestly. So in this case, we actually know. There's no question. We actually know that the jury found that he answered each one of those questions falsely. And because we know that, if this the organization or association question was fundamentally ambiguous, this court could still affirm finding that the jury was properly able to consider the other basis. Or to put it another way, if we conclude that the question asking about a crime for which you were never convicted, if we find that's not ambiguous and the jury answered that in the affirmative, we don't have to answer the other questions. That's certainly correct, Your Honor. But to address that crime or offense question, the reason that the agreement between the defense and the government is actually a weakness for the defense is that if this court were to find that the question, have you ever committed a crime or offense for which you have not been arrested, if this court were to find that that's fundamentally ambiguous, it would always be fundamentally ambiguous. That question could never go to a jury, no matter what crime or offense the person had committed. Now, it is admittedly a broad question, but the government isn't in the business of charging people based on their false statements because they've sped or something like that. The government charges based on this question when, as in this case, there is sufficient evidence to go to a jury that the defendant has actually committed a crime in the past and has lied about it. The terms crime or offense are not terms that an ordinary citizen could not understand to include crimes such as murder. And therefore, just because the question is broad, as the Sixth Circuit said in Damra, does not mean that it is fundamentally ambiguous, so ambiguous that an answer can never be false as a matter of law. And that's also what distinguishes this case from the cases cited by the defense. Those cases dealt with instances where the question could have two equally plausible interpretations. The terms crime or offense cannot equally plausibly be interpreted as referring to one thing or another. It's a crime or it's an offense under the appropriate jurisdiction. And to turn to the issue of the admissibility of the note in the alien file, the district court in this case ruled that that was inadmissible hearsay because it didn't fit the exceptions for public documents or for admissions of a party opponent or a party opponent's employee. The A file is a public document, right? That's correct, Your Honor. And with respect to authentication, if we were looking at this as an authentication matter, then the defense is certainly correct. An A file is something that would be authenticated. However, with respect to hearsay, 8038 limits the admissibility to those statements that are part of a government investigation, records of an office's activities, matters observed pursuant to a legal duty. And it was not an abuse of discretion for the district court to conclude that this handwritten note that was on the front of an application to the Inter-American Court of Human Rights that was not authored by the government but was actually authored by the Organization of American States, the district court did not abuse its discretion in concluding that that wasn't a record of the Office of Homeland Security's activities, matters observed pursuant to a legal duty or factual findings of an investigation. So even if this court were to disagree with the district court with respect to whether that was relevant, it was not an abuse of discretion to exclude it on that basis. Furthermore, admission of a party opponent or party opponent's employee, we simply don't know who wrote this. It could have been added to that document before it was put in the A file. We don't know that it was a statement by an employee of the United States government. What about this, you know, the district court relying on the fact that others were convicted of participating in this massacre but according to your point, that can turn events several years later. Yes, Your Honor. It is true that the others, the court, the district court took judicial notice of the fact that others had been convicted of murder in relation to the Dos Eras Massacre. Those convictions did not happen until 2011. However, the district court properly concluded that their convictions were relevant to show the state of the law in 1982 in Guatemala because that was something that was at issue in the trial and the district court had to instruct the jury as to the elements of murder under Guatemalan law, the way that the military code of Guatemala intersected with the civil criminal law there and other matters such as defenses to murder and amnesty. So that was a key issue in the trial was what was the state of the law in Guatemala in 1982. The main defense of Mr. Sosa was I was just following orders. So the question was, the question for the jury to decide is there a following orders defense to the crime of murder under Guatemalan law? And the 2011 convictions were relevant to show the state of the law in Guatemala in 1982. That's the part that has me a little confused. Why does that show the state of the law in 1982 with regard to whether following orders is a valid defense if the adjudication doesn't take place until 2011? Your Honor, my understanding of Guatemalan law, and this was certainly a confusing issue in the record. Help me on the exam now. Right. My understanding is that like in the United States, the law applies at the time of that the crime is actually committed. In other words, in the United States it's enshrined in the Ex Post Facto Clause. You can't be convicted of something that wasn't a crime at the time that you committed it. That's my understanding of Guatemalan law. And that was therefore a reasonable inference for the jury to draw that for someone to be convicted of murder in 2011 for something they did in 1982 means that the law in 1982 actually prohibited that conduct. But is there anything that told us that that understanding was established at the time that the defendant made the statements? I mean here, an analogy I don't really deal with, we have qualified immunity law and we turn off into the question of whether a doctrine was clearly established at a given point in time. It's all well and good for the court in Guatemala in 2011 to say that no, there is no following orders defense, but you don't have the same question there as to whether the people acting in 1982 knew that. Here we do because the question becomes what did Mr. Sosa understand at the time he answered the question. What evidence was there with regard to that issue as to whether there was a, he had reason to understand that being a member of the military and following orders wasn't going to be good enough. Your Honor, there was direct evidence in this case aside from the convictions. For one thing, there was the testimony of Sgt. Jordan and Sgt. Ibanez who were actually there at the time of the massacre, and they both testified that they understood that killing and raping was not allowed under Guatemalan military law, that killing innocent civilians was not allowed. So there was that evidence that even the sergeants who were below him in rank, he was a commissioned officer, even the sergeants understood that that was not allowed. There was also evidence that Mr. Sosa had been in communication with other people who were still in Guatemala or were in other countries who had been in the military with him at the same time. He communicated. There were e-mails introduced at trial where he said, I've heard about the situation going on in Guatemala. So the jury could also reasonably infer from that, there was evidence that an arrest warrant was executed in 2001, naming him, that there was probable cause that he committed murder in Guatemala. All those things, the jury could take them together to infer that in 2008, when he made the false statements, he knew that he committed a crime in 1982, even if the court had not admitted or taken judicial notice of the 2011 convictions. Before your time runs out, I'd like you to talk about the substantive reasonableness of the sentence in this case, the crimes Mr. Sosa was convicted of, both for lying in some form to immigration authorities in connection with obtaining citizenship. But when sentencing him, why does what he lied about affect the gravity of these crimes? Are there any other cases from this circuit that discuss the subject matter of the lie for these crimes in determining the proper sentence? Your Honor, I'm not aware of any other cases from this circuit that address that. I submitted a 28-J letter in which the First Circuit recently addressed that about two weeks ago, the Munoz-Yezi case, but I'm not aware of any authority from this circuit. But the district court did make a record under the 3553A factors, saying that the district court understood that this was a different lie than simply lying about one's marital status or about making false statements about one's student visa, that this was something categorically different because of the need for the United States to be sure that we're not admitting people and naturalizing people who have engaged in acts of genocide and other human rights violations. The district court made those findings, saying that it's important to deter others who would seek the privilege of United States citizenship from doing so after committing crimes and lying about them. So even though there's not direct authority from this circuit, it was certainly within the 3553A factors for the district court to consider the seriousness of the offense. The offense in this case, yes, it was just lying on a naturalization application and 1425 obtaining naturalization contrary to law. However, there's sort of a range of conduct as to how one can go about doing that. In this case, the facts that he concealed were extremely serious. He was someone that if he had disclosed this, the jury made a finding that he likely would not have been naturalized in the United States. So with respect to the substantive reasonableness, it's our position that the sentence imposed here was reasonable. It was the same sentence that Sergeant Hordan received. I cited the 11th Circuit decision. He received a 120-month sentence. His guidelines range was lower. It was zero to six months. And in the Mugnonezzi case, which involved the Rwandan genocide, the defendant there also received a 120-month sentence on a 1425 count, even though her guidelines range were only zero to six months at the time. And again, the guidelines, there's no presumption of unreasonableness just because the sentence was significantly higher than the guidelines range. But just one final note, I did note it in my brief footnote three. There is this issue of an illegal sentence on count one. What should we do? We would ask the court to remand just for a correction of the illegal sentence, a very limited remand. The district court apparently made an oversight, and we would ask just for purposes of a clean record, particularly for any potential collateral review, that there not be an illegal sentence imposed. Thank you. Thank you. Rebuttal. Thank you. So the concern was what counsel for the government said was the government isn't in the business of prosecuting people for going five miles over. That's basically trust us. Give us a blank check and trust us. That's the problem with this question. It allows the government to do it if it so chooses, and that is the issue with this question. It is so fundamental. Just to go back to Judge Tashima's question, count one had three questions, and there were special verdicts with respect to each of the questions. Count two is based solely on the crime or offense question. Okay. So if the court does find that the crime or offense question is fundamentally ambiguous or excessively vague, count two would have to fall. With respect to Judge Nelson had a question regarding anything in this circuit or district courts, I'm not aware of anything, where they have looked behind the form, and this is something that I had argued repeatedly. It's from a war crime aspect. Should he be prosecuted? Absolutely. But this wasn't the forum for it. In fact, we brought this up that the Guatemalans hadn't even moved for an extradition of Mr. Sosa, and there's an extradition treaty between Guatemala and the United States. So we are now basically holding the water for the Guatemalan government, first extraditing him from Canada, convicting him, and then extraditing him potentially or departing him to wherever he goes. I see I'm out of time. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Nelson, Tashima, Clifton